UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KIMBERLY R. OLSON,

Plaintiff,

v.

LAURA BYNUM, et al.,

Defendants.

No.  2:20–cv–2481–TLN–KJN PS

ORDER TO STAY PROCEEDINGS

(ECF No. 18)

Plaintiff is proceeding without counsel[1] and in forma pauperis in this civil rights action against the Siskiyou County Clerk-Registrar of Voters, Laura Bynum, and against the president of the board of her local water district, Robert Puckett, Sr.[2]  Defendant Bynum moves to dismiss all claims, and defendant Puckett joins in the motion.  (ECF Nos. 18, 19.)  After briefing, the court took the motion under submission (ECF No. 34) and now GRANTS IN PART the motion to

////

////

---

[1]    Actions where a party proceeds without counsel are referred to a magistrate judge pursuant to E.D. Cal. L.R. 302(c)(21).  See 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72.  This case was reassigned to the undersigned upon the recusal of the previously assigned magistrate judge.  (ECF No. 10.)

[2]    Plaintiff also originally named a third defendant, Robert Winston, but all claims against Winston were voluntarily dismissed in March 2022 while his separate motion to dismiss was pending.  (ECF Nos. 39, 41, 42.)

dismiss insofar as it requests a stay of proceedings.[3]

### I.     <u>REQUEST FOR JUDICIAL NOTICE</u>

During briefing of the motion, the court ordered the parties to keep the court informed of significant developments in a related state court case, <u>Bynum v. County of Siskiyou Board of Supervisors</u>, No. 2019-1537 (Cal. Super. Ct., Siskiyou Cty.), hereafter "the Mandamus Proceeding," where defendant Bynum (the petitioner in state court) is seeking declaratory relief regarding some of her actions that gave rise to this suit.  (ECF Nos. 24, 34.)  Defendant Bynum requests the court take judicial notice of multiple documents attached to her opening and reply briefs.  (ECF Nos. 18.2-18.3, 33.1-33.2.)  Almost all of these documents are filings and orders from the Mandamus Proceeding.  Plaintiff objects to various of Bynum's requests for judicial notice, primarily asserting impropriety in Bynum attaching documents to the reply brief; and plaintiff requests judicial notice of various other documents.  (ECF No. 29 at 17; ECF Nos. 35-36.)  Defendant Bynum, in turn, "requests" that the court strike plaintiff's objection and judicial notice request as uninvited surreplies.  (ECF No. 37.)

On a motion to dismiss, the court may take judicial notice of court filings and other matters of public record not attached to the complaint as long as the facts noticed are not subject to reasonable dispute.  <u>Intri-Plex Technologies, Inc. v. Crest Grp., Inc.</u>, 499 F.3d 1048, 1052 (9th Cir. 2007); <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Rather than rule on each of the documents at the outset, the court notes below where it is taking judicial notice of specific documents.  The requests for judicial notice are denied as to those documents not specifically noted.  For those documents being judicially noticed, the court does not take notice of any disputed facts therein.  <u>See</u> <u>United States v. Corinthian Colls.</u>, 655 F.3d

---

[3]        The undersigned magistrate judge has authority to order this stay directly, without findings and recommendations to the assigned district judge, because this order does not dispose of any claims or defenses and does not effectively deny any ultimate relief sought.  <u>See</u> <u>SEC v. CMKM Diamonds, Inc.</u>, 729 F.3d 1248, 1260 (9th Cir. 2013); <u>PowerShare, Inc. v. Syntel, Inc.</u>, 597 F.3d 10, 13-14 (1st Cir. 2010).  Given that the court is merely denying the remainder of the motion to dismiss without prejudice to renewal, the entire order is non-dispositive and thus does not require findings and recommendations.

984, 998–99 (9th Cir. 2011).

Given that the court instructed the parties to inform it of significant developments in the Mandamus Proceeding after Bynum filed her opening brief, the court finds no impropriety in Bynum providing additional records with her reply.  Although plaintiff's objections filed after Bynum's reply were indeed uninvited, the court declines to strike ECF Nos. 35 and 36.

**II.**    **BACKGROUND**

   **A. Introduction**

This case is the latest in a series of lawsuits plaintiff has brought against local government entities and officials in Siskiyou County, California, where she resides in the town of Hornbrook. As recounted by the court in one of plaintiff's (ongoing) separate suits, "Hornbrook is a little community of a couple hundred people in Siskiyou County, California, near California's border with Oregon." Olson v. Puckett, No. 2:21-CV-1482-KJM-DMC, 2021 WL 4237712, at *1 (E.D. Cal. Sept. 17, 2021).  Hornbrook Community Services District ("HCSD") is a public entity that provides water to plaintiff and about 130 other Hornbrook residents.  Id.  (See ECF No. 16 at 2.)

The present suit arises from plaintiff being denied a place on the ballot for a position on the HCSD board of directors in the March 3, 2020 Presidential Primary election.  (ECF No. 16 at 2–4.)  On November 14, 2019, plaintiff "registered as a candidate" for the HCSD Director position.[4]  (Id. at 3.)  According to plaintiff, Bynum (the Siskiyou County Clerk-Registrar of Voters) conspired with co-defendant Puckett (the president of the board of the HCSD) and since-dismissed defendant Robert Winston (the HCSD's legal counsel) to remove plaintiff's name from the list of candidates to appear on the March 3, 2020 ballot.  (Id. at 3-4, 8.)  Plaintiff alleges defendants were motivated to do this because of plaintiff's numerous earlier administrative and legal actions against the HCSD and against Puckett and Winston.  (Id. at 5, 8.)

---

[4]    The court grants defendant Bynum's request for judicial notice of plaintiff's Declaration of Candidacy completed November 14, 2020.  (ECF No. 33.1 at 43-44.)  See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (court may consider evidence not attached to complaint but on which complaint "necessarily relies" if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document").

### B.  The State Court Mandamus Proceeding

In late 2019, plaintiff learned that she was not going to be listed on the ballot and questioned Bynum's authority to remove her from the ballot without notice and an opportunity to be heard.  (Id. at 4.)  In response, on December 23, 2019, Bynum filed the Mandamus Proceeding referenced at the outset—what plaintiff terms a "sham legal action" seeking a writ of mandamus for the state court to direct Bynum to strike plaintiff from the candidate list because she was not eligible to hold office.  (Id. at 4-5 & n.6; ECF No. 18.3 at 6-12 (Ex. 2, Verified Petition for Writ of Mandamus).[5])  Bynum's petition—while filed against the County Board of Supervisors as the respondent—named plaintiff (Ms. Olson) as the real party in interest, and plaintiff continues to actively litigate against Bynum in the Mandamus Proceeding.  (ECF No. 18.3 at 6.)

Bynum's petition alleged that, since accepting Ms. Olson's Declaration of Candidacy for office, Bynum had learned that Ms. Olson was previously convicted of three felonies that (according to Bynum) make her ineligible for office under California Elections Code § 20, which provides:

> A person shall not be considered a candidate for, and is not eligible to be elected to, any state or local elective office if the person has been convicted of a felony involving accepting or giving, or offering to give, any bribe, the embezzlement of public money, extortion or theft of public money, perjury, or conspiracy to commit any of those crimes.

Cal. Elec. Code § 20(a).  (See ECF No. 18.3 at 7.)

According to the petition, on December 12, 2019, Bynum received certified copies of three public benefits fraud felony convictions that Ms. Olson sustained in Placer County in January 2000.  (ECF No. 18.3 at 9-10.)  According to the Court of Appeal that affirmed the jury convictions, Ms. Olson was convicted of "fraud to obtain aid (Welf. & Inst. Code, § 10980, subd. (c)(2)), making false statements to receive health care benefits (Welf. & Inst. Code, § 14014), submitting a false eligibility statement to obtain benefits (Welf. & Inst. Code, § 11054),

---

[5]     The court grants defendant Bynum's request for judicial notice of her mandamus petition.  See Reyn's Pasta Bella, 442 F.3d at 746 n.6 (filings in other courts); Marder, 450 F.3d at 448 (documents incorporated by reference in the complaint).

and a true finding alleging taking of funds and property of a value exceeding $50,000 (Pen. Code,
§ 12022.6, subd. (a)).” People v. Olson, No. C035499, 2002 WL 799690 at *1, *5 (Cal. Ct. App.
Apr. 30, 2002).[6]  These convictions were based on plaintiff's receipt of Supplemental Social
Security Income and Medi-Cal benefits through California while actually residing in Oregon
(based on the jury's view of the evidence). Id. at *1-5.

On December 18, 2019, based on these conviction records, Bynum notified plaintiff via
certified mail and email that she would be removing plaintiff's name from the upcoming ballot.
(ECF No. 18.3 at 10; ECF No. 33.1 at 42.)  Plaintiff quickly replied to Bynum with emails
challenging Bynum's authority to remove her as a candidate.  (ECF No. 18.3 at 10; ECF No. 33.1
at 62-63.[7])

Though not alleged in the instant complaint, plaintiff states in her opposition to the present
motion that (as later alleged by Bynum in the Mandamus Proceeding) ballots went to the printer
on December 27, 2019, without her name on them.  (ECF No. 29 at 34-35, citing Bynum's
Amended Petition ¶ 23.)  The state court did not rule on Bynum's mandamus petition before the
March 2020 election, and indeed still has not ruled on the petition to this day.[8]

---

[6]     Given the Court of Appeal description of plaintiff's criminal offenses and underlying
conduct, the court finds it unnecessary to take judicial notice of the verdict forms attached to
Bynum's mandamus petition.  (See ECF No. 33.1 at 47-54.)

[7]     The court grants defendant Bynum's request for judicial notice of these email
communications, attached to the mandamus petition.  See Reyn's Pasta Bella, 442 F.3d at 746 n.6
(filings in other courts); Marder, 450 F.3d at 448 (documents incorporated by reference in the
complaint).

[8]     It appears that the Mandamus Proceeding was thrown off course by Ms. Olson's brief
removal of the action to this court in January 2020.  (See Bynum v. Cty. of Siskiyou Board of
Supervisors, No. 2:20-cv-0150-TLN-DMC (E.D. Cal.), ECF No. 1.)  This court remanded the
action back to state court in February 2020, but just before the remand order issued, Bynum filed
a notice of voluntary dismissal of all claims.  (Id., ECF Nos. 5, 6.)  Nevertheless, after a
significant delay, the state court resumed the Mandamus Proceeding on remand in early 2021.
The continued prosecution of the Mandamus Proceeding—despite Bynum's voluntary
dismissal—gives rise to several of the claims plaintiff asserts in this action.  However, because
the court finds abstention warranted, discussion of these claims is unnecessary at present.

### C.  Commencement of this Action & Bynum's Amended Petition

At the end of 2020, plaintiff instituted the present action, obtaining leave to proceed in forma pauperis in this court.  (ECF Nos. 1, 3.)  Eventually, the previously assigned magistrate judge ordered service on defendants after screening the complaint under 28 U.S.C. § 1915(e)(2).  (ECF No. 4.)

The same day, August 25, 2021, defendant Bynum—the petitioner in the Mandamus Proceeding—filed an amended mandamus petition in the state court.  (ECF No. 18.3, Ex. 5 ("Amended Petition."[9])  The only substantive difference between the Amended Petition and the original is that Bynum added a cause of action for declaratory relief and slightly reframed her prayer for mandamus relief—in recognition that the March 3, 2020 election had long-passed by.  (ECF No. 18.3 at 40-41.)  The Amended Petition now seeks (A) a writ of mandate prohibiting Bynum from accepting Ms. Olson as a qualified candidate for <u>any</u> elective office based on her felony convictions, and (B) a declaration that Bynum "acted properly in removing Kimberly Olson's name from the qualified candidate list for elective office."  (<u>See</u> <u>id.</u> at 41, requesting such declaration as well as a writ prohibiting "placing [Olson's] name on a qualified candidate list for an elective office.")

Bynum also added to the Amended Petition an allegation that in removing plaintiff from the ballot she was acting pursuant to California Elections Code § 10513, which provides in full:

> Upon filing each declaration of candidacy, the county elections official shall examine the declaration to determine if it conforms with the provisions of this part and shall certify whether it is sufficient. For this purpose, the elections official shall be entitled to obtain from any officer of an affected county all information necessary to make this determination.

(ECF No. 18.3 at 39, Amended Petition ¶ 20.)

The parties are still actively litigating the Mandamus Proceeding in state court.  The latest report received from the parties as of this writing is that on December 2, 2021, the state court

---

[9]     The court grants defendant Bynum's request for judicial notice of her amended mandamus petition.  <u>See</u> <u>Reyn's Pasta Bella</u>, 442 F.3d at 746 n.6 (filings in other courts); <u>Marder</u>, 450 F.3d at 448 (documents incorporated by reference in the complaint).

denied an Anti-SLAPP Motion brought by Ms. Olson, and that Ms. Olson is appealing that denial and also filed a demurrer to the Amended Petition.  (ECF Nos. 33.1 at 2, 37 at 3.)

### D.  Claims in this Action

After defendants moved to dismiss the original complaint, plaintiff filed a First Amended Complaint ("FAC") in this court.  (ECF Nos. 9, 16.)  The FAC asserts a host of federal claims against all defendants and a handful of state-law claims against Bynum only.  Plaintiff brings federal claims under 42 U.S.C. § 1983 for violations of the First Amendment, the Fourteenth Amendment's due process and equal protection clauses, and purportedly the Fourth Amendment; she also brings federal claims under 42 U.S.C. §§ 1985 and 1986 for conspiracy to commit such violations and failure to prevent such violations.  (ECF No. 16 at 8-12.)  Plaintiff also brings five pendent state-law claims against Bynum alone for violating her right to free speech under the California Constitution, art. I, § 2; "willful and/or negligent" infliction of emotional distress; violation of California's Bane Act; and malicious prosecution and abuse of process.  (Id. at 12-14.)  Plaintiff seeks "punitive and exemplary damages" of $100,000 for each cause of action and declaratory and injunctive relief against further infringement of her rights.  (Id. at 15.)

Defendant Bynum moves to dismiss the FAC under Rule 12(b)(6) both contesting the sufficiency of the allegations and requesting abstention under various doctrines.  (ECF No. 18.1.)  Defendant Puckett, represented by separate counsel, filed a notice of joinder in Bynum's motion asserting no separate arguments.  (ECF No. 19.)  The motion was fully briefed and taken under submission.  (ECF Nos. 18.1, 29, 33, 35-37.)

## III.   **DISCUSSION**

Because the court agrees with defendants that abstention is warranted under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), the court does not address the remainder of the motion to dismiss.

### A.  Mootness

Before getting to abstention, though, the court notes that this case is not moot even though the election giving rise to suit took place several years ago.  Defendants do not argue to the contrary.  At minimum, plaintiff's request for punitive damages preserves the live controversy

requirement of Article III.  See Wilson v. Nevada, 666 F.2d 378, 380–81 (9th Cir. 1982) ("[A] plaintiff's claims as to money damages survive regardless of the mootness of any claim for declaratory or injunctive relief.").  Further, although the FAC does not expressly request nominal damages, it does request "such other and further relief as the court may deem proper."  (FAC at 15.)  That request is sufficient to permit plaintiff to pursue nominal damages, Yniguez v. State, 975 F.2d 646, 647 n.1 (9th Cir. 1992), which likewise preserves the controversy, see Bernhardt v. County of L.A., 279 F.3d 862, 871 (9th Cir. 2002) ("A live claim for nominal damages will prevent dismissal for mootness.").

Normally, post-election challenges are found not moot because they are "capable of repetition, yet evading review."  Schaefer v. Townsend, 215 F.3d 1031, 1033 (9th Cir. 2000).  A candidate-plaintiff need not demonstrate a likelihood of running for office in the future in order to come within this exception to the mootness doctrine.  Id. (stating that capable-of-repetition prong should not be narrowly construed to apply "only when a candidate plans to seek reelection" and declining to "examin[e] the future political intentions of the challengers").  However, here, plaintiff argues in her opposition that she "does not seek any order of this Court compelling Bynum to accept any declarations of candidacy from Plaintiff Olson in the future; and, has no intention of ever submitting a declaration of candidacy to Bynum ever again."  (ECF No. 29 at 28 n.24.)  If by that plaintiff means she will never again seek elective office in the state, her claims for injunctive relief would be moot.  While the court will not investigate whether a plaintiff may or may not have plans to run again in the future, it cannot ignore a plaintiff's affirmative statement that she will never run again.  However, given the presence of live requests for punitive damages as well as for declaratory relief/nominal damages, and given that pro se plaintiff's statement was made in a context unrelated to the mootness question (which defendants themselves do not raise), the undersigned does not presently recommend dismissing as moot any of the FAC's claims.

**B. *Pullman* Abstention**

Although the case is not moot, the court nevertheless concludes that it should be stayed under the Pullman doctrine for a state tribunal to first resolve certain unsettled questions of state

elections law that will impact the analysis of plaintiff's constitutional claims in this court.

As recently explained by the Ninth Circuit, "[u]nder Pullman abstention the federal courts have the power to refrain from hearing cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law." Slidewaters LLC v. Washington State Dep't of Lab. & Indus., 4 F.4th 747, 761 (9th Cir. 2021) (cleaned up), cert. denied, 142 S. Ct. 779 (2022); see Zwickler v. Koota, 389 U.S. 241, 251 (1967) (Pullman abstention is appropriate when a state statute is "fairly subject to an interpretation which will avoid or modify the federal constitutional question"). "Abstention is appropriate if: (1) there are sensitive issues of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open, (2) constitutional adjudication could be avoided by a state ruling, and (3) resolution of the state law issue is uncertain." Slidewaters, 4 F.4th at 761 (quotation omitted).

Pullman abstention "is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." Baggett v. Bullitt, 377 U.S. 360, 375 (1964).[10] "Pullman abstention does not exist for the benefit of either of the parties but rather for 'the rightful independence of the state governments and for the smooth working of the federal judiciary.'" San Remo Hotel v. City & Cty. of San Francisco, 145 F.3d 1095, 1105 (9th Cir. 1998) (quoting Pullman, 312 U.S. at 501). "When a court abstains in order to avoid unnecessary constitutional adjudication . . . it is not seeking to protect the rights of one of the parties; it is seeking to promote a harmonious federal system by avoiding a collision between the federal courts and state (including local) legislatures." Id. (quotation omitted).

"Once Pullman abstention is invoked by the federal court, the federal plaintiff must then seek a definitive ruling in the state courts on the state law questions before returning to the federal

---

[10]    Although defendant Bynum argues the court lacks subject matter jurisdiction based on Pullman, abstention "does not implicate federal courts' subject matter jurisdiction," and the court is "never required to apply Pullman." Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791, 802 (9th Cir. 2001) (cleaned up).

forum." San Remo Hotel v. City & Cty. of San Francisco, 145 F.3d 1095, 1104 (9th Cir. 1998).
In the meantime, the case is stayed in the federal court.

Although defendant's briefing of the Pullman issue does not analyze the applicable three-factor framework, the issue was sufficiently raised to allow plaintiff the opportunity to respond, and the court is satisfied from its own review that Pullman abstention is appropriate for this case. See Thinh Tran v. Dep't of Plan. for Cty. of Maui, No. CV 19-00654 JAO-RT, 2020 WL 3146584, at *6 (D. Haw. June 12, 2020) ("Federal courts may consider both Pullman and Burford abstention sua sponte." (citing Columbia Basin, 268 F.3d at 802 where the Ninth Circuit noted it could "sua sponte consider Pullman abstention at any time")).

### 1. *Pullman*'s Applicability in this Elections Civil Rights Case

Initially, the court recognizes that "abstention is the exception and not the rule, and it is strongly disfavored in First Amendment cases." Chula Vista Citizens for Jobs & Fair Competition v. Norris, 782 F.3d 520, 528 (9th Cir. 2015) (en banc) (cleaned up).  The Ninth Circuit instructs that courts should be reluctant to abstain in all types of "civil rights cases regardless of the type of constitutional interest at stake" because "abstention can delay the redress of significant constitutional wrongs." Pearl Inv. Co. v. City & Cty. of San Francisco, 774 F.2d 1460, 1463 (9th Cir. 1985).

Nevertheless, "there is no per se civil rights exception to the abstention doctrine." C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 381 (9th Cir. 1983); see Pearl Inv., 774 F.2d at 1463 ("[A]bstention may be proper in a civil rights case to avoid unnecessary interference with an important state program.").  Indeed, in cases challenging the administration of elections (which generally raise federal constitutional civil rights claims), Pullman abstention is favored—if not outright required—because this is a sensitive area of social policy specifically delegated to the states.  See Burdick v. Takushi, 846 F.2d 587, 589 (9th Cir. 1988) (citing U.S. Const. art. I, § 4, cl. 1); id. at 587 (holding that the district court "should have abstained from deciding the merits of [the] constitutional challenge" as to whether Hawaii's election laws prohibited write-in voting).

///

///

Plaintiff asserts colorable claims for violations of her federal constitutional rights under the First Amendment, the Due Process Clause, and the Equal Protection Clause.[11]  (FAC at 8-11.) Though independently asserted in the FAC, the common thrust of these claims is that "Bynum seized Plaintiff's then-vested property/liberty/free expression interest in being a then-registered candidate without any proper, Constitutionally-adequate notice, without any court order, and without affording Plaintiff any pre-, and/or post-deprivation hearing concerning her actions." (ECF No. 29 at 16.)

Plaintiff emphasizes that she is not contesting the constitutionality of any California elections laws, but rather is challenging defendant Bynum's method and motivation for applying those laws to her.  (ECF No. 29 at 13, arguing "there is no challenge whatsoever by Plaintiff to the Constitutionality of any State statutes.")  Accepting that position, the court views this case as bringing an as-applied challenge to the constitutionality of at least California Elections Code § 20. As-applied challenges to election laws can support abstention just as well as facial challenges, if not better.  See Burdick, 846 F.2d at 589 (finding Pullman abstention warranted in as-applied challenge); Porter v. Jones, 319 F.3d 483, 493 n.9 (9th Cir. 2003) (noting that, unlike in a facial attack, "in as-applied cases a statute may be construed narrowly so as not to apply to the facts in the case presented, thus averting a constitutional determination").

Finally, the animating reason behind courts' reluctance to abstain in cases implicating First Amendment rights does not squarely apply in this case because—as noted in the mootness analysis—plaintiff indicates that she has no impending plans to seek public office.  (ECF No. 29 at 28 n.24.)  See Porter, 319 F.3d at 492-93 (citing risk that "the delay that comes from abstention may itself chill the First Amendment rights at issue");  Barr v. Galvin, 626 F.3d 99, 107 & 108 n.3 (1st Cir. 2010) (in reversing and remanding with instructions to abstain under Pullman, finding that "any delay in obtaining relief pending state court adjudication would impose no

---

[11]     Plaintiff's Fourth Amendment claim alleging Bynum's "warrantless, non-judicially authorized 'seizure'" of her constitutional rights is not actionable.  (FAC at 12, Count 9.)  The Fourth Amendment, which protects against unreasonable physical searches and seizures of "persons, houses, papers, and effects," has no application to this case.

onerous burden upon the parties" because next election was almost two years away).

Thus, the court concludes that <u>Pullman</u> abstention is not precluded by the First Amendment and other civil rights challenges raised in this suit.

### 2.   First Factor:  Sensitive Issues of Social Policy

On the first <u>Pullman</u> factor, as referenced at the outset, state election laws are unquestionably "'a sensitive area of social policy' into which federal courts should intrude with great reluctance." <u>Burdick</u>, 846 F.2d at 589 (quoting <u>Pullman</u>); <u>see</u> <u>Miller v. Treadwell</u>, 736 F. Supp. 2d 1240, 1241 & n.7 (D. Alaska 2010) (citing <u>Burdick</u> in support of prior finding that elections law complaint involved sensitive issues of state law).

Therefore, the court must find the first factor supports abstention here because plaintiff is asking the court to decide whether defendant Bynum unconstitutionally applied Elections Code § 20's convictions-based ban to her, in violation of her First Amendment and Fourteenth Amendment rights.  Again, plaintiff's insistence that she is not raising a constitutional challenge to any state law falls flat.  According to plaintiff, "her claims are simply that Bynum did things that violated Plaintiff's long-established Constitutional rights, and she <u>also</u> did them in a way that violated the plain language of various statutes."  (ECF No. 29 at 13.)  Thus, even accepting that plaintiff is not <u>facially</u> challenging the constitutionality of § 20, this case nonetheless presents a constitutional challenge to the election statute's <u>application</u> to her.  The first factor weighs in favor of abstention.

### 3.   Second Factor:  Avoiding or Altering Federal Constitutional Adjudication

The court turns next to the second <u>Pullman</u> factor:  the possibility of a future state court ruling avoiding or altering the constitutional questions raised.  <u>See</u> <u>Zwickler</u>, 389 U.S. at 251; <u>Slidewaters</u>, 4 F.4th at 761.  This factor is more easily satisfied in cases like this one that do not bring a facial challenge to the state laws at play.  <u>See</u> <u>Porter</u>, 319 F.3d at 493.  As mentioned above, unlike in a facial attack, "in as-applied cases a statute may be construed narrowly so as not to apply to the facts in the case presented, thus averting a constitutional determination."  <u>Id.</u> at 493 n.9; <u>see also</u> <u>Procunier v. Martinez</u>, 416 U.S. 396, 402 n.5 (1974) ("Where the case turns on the applicability of a state statute or regulation to a particular person or a defined course of

conduct, resolution of the unsettled questions of state law may eliminate any need for

constitutional adjudication.").  As just established, plaintiff here brings an as-applied challenge to

Elections Code § 20, making abstention more likely appropriate, as a general matter.

Substantively, all that is required to satisfy the second factor is a "state law question that

has the potential of at least altering the nature of the federal constitutional questions." C-Y Dev.

Co. v. City of Redlands, 703 F.2d 375, 378 (9th Cir. 1983); id. at 379 ("[I]t is enough that the

state court determination may obviate, in whole or in part, or alter the nature of the federal

constitutional questions.").

Here, the court discerns two unsettled questions of state law underlying this action:

1. Whether Elections Code § 20 prohibits a person convicted of public benefits fraud,
   like plaintiff, from being a candidate for state or local elective office; and

2. Whether a designated elections official, like County Clerk Bynum, has the authority to
   determine whether a declared candidate has any criminal conviction(s) that disqualify
   them under § 20.

Plaintiff devotes significant portions of her opposition brief to this second question.  (See,

e.g., ECF No. 29 at 25 (referencing Bynum's knowledge that she "had no lawful authority to

remove Plaintiff Olson's name from the list of candidates," and 33-34 (contesting Bynum's

authority to evaluate extrinsic evidence and interpret § 20, under California law).)  Bynum

responds that she did have authority to remove plaintiff's name from the ballot under Elections

Code § 20 and Elections Code § 10513, among others.  (ECF No. 18.1 at 12-13.)  Bynum's

currently pending mandamus petition also at least implicitly raises both questions by requesting a

declaration that she "acted properly in removing Kimberly Olson's name from the qualified

candidate list for elective office."[12]  (ECF No. 18.3 at 41, Amended Petition.)

The first question, about the scope of § 20, arises more subtly but no less persistently.

Defendant Bynum assumes, as she did when first rejecting plaintiff's candidacy, that § 20's

---

[12]     For reasons explained further below, the possibility of the state court actually answering
these questions is not dispositive for this court's abstention decision; however, it demonstrates
that the state courts are well positioned to answer such questions of state law.

exclusion of those convicted of felonies involving "theft of public money" requires exclusion of a candidate like plaintiff who was previously convicted of public benefits fraud.  (ECF No. 18.1 at 8 (asserting that plaintiff "had three prior felony convictions that involve the theft of public money").)  This ultimately may turn out to be a well-founded assumption.[13]  But, as discussed next, no state court has yet interpreted the text of § 20, which plaintiff maintains was meant to curb corrupt money practices committed while holding public office and only seeks to "restrict eligibility of those convicted of <u>abuse of public offices</u>."  (FAC at 4 n.4; <u>see</u> ECF No. 33.1 at 62, December 2019 email to Bynum.)

Given the dearth of state court interpretations of § 20, there is a possibility that a state court might narrowly construe its terms, along with § 10513 and perhaps other surrounding election laws, to either (1) conclude that Bynum exceeded her ministerial authority by investigating and evaluating plaintiff's criminal record, or (2) conclude that § 20 does not in fact apply to convictions for public benefits fraud by private citizens, or both.

Were a state court to so hold on either front, the undersigned presumes that county election officials including defendant Bynum would heed that narrow interpretation, thereby avoiding the need for this court to decide whether as a matter of federal constitutional law Bynum must be enjoined (as plaintiff requests) based on the First or Fourteenth Amendments.  <u>See</u> <u>Burdick</u>, 846 F.2d at 589 (noting in support of abstention that "[i]f the Hawaii state courts were to decide that Hawaii law permits write-in voting . . . then we may presume that Hawaii election officials would administer the election laws accordingly."); <u>San Remo Hotel</u>, 145 F.3d at 1103 ("Federal courts give a state judgment the same preclusive effect that that judgment would receive in state court.").

---

[13] <u>See</u> Kevin Heitz, <u>Chapter 160: Felons Who Violate "Public Trust" Banned from Elected Office</u>, 44 McGeorge L. Rev. 639 (2013) (discussing legislative history of Cal. Elections Code § 20); Assembly Committee on Elections and Redistricting, Committee Analysis of AB 2410, at 3-4 (May 1, 2012), http://www.leginfo.ca.gov/pub/11-12/bill/asm/ab_2401-2450/ab_2410_cfa_20120430_105724_asm_comm.html (listing bill's purpose to disqualify those convicted of felonies related to, among other things, "fraud offenses committed against both the government and private citizens, mail and wire fraud, mortgage fraud, [and] false claims").

Although plaintiff's due process and First Amendment claims do not <u>turn on</u> whether Bynum correctly or incorrectly interpreted § 20 or her authority to enforce it under § 10513, the interpretation of § 20 and related election laws will dictate whether the court must reach the constitutional questions in the first place.  For instance, if a state court determines that Bynum exceeded her authority by unilaterally rejecting plaintiff's declaration of candidacy, that would in effect be a ruling interpreting the state election statutes in a narrow fashion so as not to exclude plaintiff's candidacy.  See <u>Porter</u>, 319 F.3d at 493 n.9 (noting greater likelihood of abstention where "a statute may be construed narrowly so as not to apply to the facts in the case presented, thus averting a constitutional determination"); <u>see also</u> <u>Procunier</u>, 416 U.S. at 402 n.5.  Likewise, if a state court determines that § 20 does not encompass convictions for public benefits fraud by non-officeholders, there would be no need for this court to decide whether defendant Bynum's application of § 20 to exclude plaintiff violates the Constitution—because a state court would already have ruled that § 20 does not apply to plaintiff at all.

The court acknowledges that a state court ruling on these two questions would not resolve plaintiff's constitutional claims arising from Bynum's allegedly discriminatory and retaliatory invocation of § 20—that is, her equal protection "class of one" cause of action and her First Amendment retaliation cause of action (Counts 4 and 5).[14]  However, there is no abstention requirement that all constitutional questions and damages requests be resolvable by a state tribunal's clarifying interpretation.  See <u>C-Y Dev.</u>, 703 F.2d at 380 ("Although abstention in this case may not obviate the need to decide all the federal constitutional questions, it will

_____

[14]     As currently pleaded, these causes of action are substantively indistinguishable.  Both claim that plaintiff was singled out due to her litigious history with the defendants.  If and when litigation resumes in this court, the undersigned may recommend dismissal of the equal protection "class of one" claim as duplicative of the retaliation claim.  <u>See, e.g.</u>, <u>Mazzeo v. Gibbons</u>, No. 2:08-CV-01387-RLH, 2010 WL 4384207, at *5 (D. Nev. Oct. 28, 2010) ("The Court concludes that [Plaintiff's] allegations impermissibly combine her First Amendment Retaliation and Fourteenth Amendment Equal Protection claims."), <u>aff'd sub nom.</u> <u>Mazzeo v. Young</u>, 510 F. App'x 646 (9th Cir. 2013); <u>Occhionero  v. City of Fresno</u>, No. 05-CV-1184 LJO-SMS, 2008 WL 2690431, at *8 (E.D. Cal. July 3, 2008) ("[T]his Court agrees with other courts that a claim of different treatment in retaliation for speech is a First Amendment claim which does not invoke the Equal Protection Clause.  At its core, [Plaintiff's] claim is First Amendment retaliation, not equal protection."), <u>aff'd</u>, 386 F. App'x 745 (9th Cir. 2010).

substantially reduce the contours of such adjudication and place it in a different posture."); see id. (noting that although plaintiff "might return to federal court to seek damages for the alleged temporary deprivation of its property rights, the constitutional issues will have been substantially narrowed and refined" (citation omitted)).  Especially in light of the state constitutional claim plaintiff also asserts (violation of her free expression rights under article I, section 2 of the California Constitution), the undersigned is confident that "a narrowing of the constitutional issues and the principles of comity that will be furthered by allowing the state courts to first pass on the validity [and scope] of this [state elections law] under state law are sufficient 'countervailing interests' to justify abstention in this case."  Id. (citing Cty. of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959)).

### 4.   Third Factor:  Uncertainty of Determinative Issues of State Law

Finally, the court turns to the uncertainty factor.  "Uncertainty for purposes of Pullman abstention means that a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law."  Pearl Inv., 774 F.2d at 1465.  "Resolution of an issue of state law might be uncertain because the particular statute is ambiguous, or because the precedents conflict, or because the question is novel and of sufficient importance that it ought to be addressed first by a state court."  Id.

The current Section 20 was added to the Elections Code relatively recently, in 2012, and there are not yet any California Attorney General opinions or state court cases interpreting its provisions or proper method of enforcement.  This, combined with the at least arguable ambiguity of § 20's text and the complexity of the statutory scheme for elections administration, leads the court to conclude that the uncertainty factor is satisfied.  See Zwickler, 389 U.S. at 251 (abstention requires both lack of prior state court interpretation and that statute be "fairly subject" to interpretation that will avoid or modify federal constitutional question).

On the question of § 20's scope, as mentioned above, plaintiff argues in the FAC—as she did in her initial objection to Bynum—that § 20 was meant to curb corruption by public officeholders and only seeks to "restrict eligibility of those convicted of abuse of public offices." (FAC at 4 n.4; see ECF No. 33.1 at 62.)  Without delving into the legislative history of § 20, the

court sees more than a slight possibility that a state court might agree with plaintiff's reading. Section 20 bars from candidacy and elected office those convicted of felonies "involving accepting or giving, or offering to give, any bribe, the embezzlement of public money, extortion or theft of public money, perjury, or conspiracy to commit any of those crimes."  Cal. Elections Code § 20(a).  The listing of "theft" of public money alongside crimes of bribery, embezzlement, and extortion at least suggests that the legislature may have intended § 20 only to restrict the future eligibility of those who were convicted based on abuses of their financial power while holding public office.

On the question of Clerk Bynum's investigation and enforcement authority, ostensibly under § 10513, plaintiff quotes from <u>Alliance for a Better Downtown Millbrae v. Wade</u>, where the state Court of Appeal held that a local elections official—the city clerk—exceeded her ministerial authority by refusing to certify a city ordinance initiative petition based on her own factfinding beyond the four corners of the petition.  108 Cal. App. 4th 123, 131-36 (1st Dist. 2003).  (<u>See</u> ECF No. 29 at 33.)  The Court of Appeal examined the applicable Elections Code §§ 9201 and 9207 and recognized that even though neither statute contained an "express authorization to the local elections official to enforce its provisions," election officials have "a ministerial duty to reject initiative petitions that violate one or more statutory procedural requirements."  <u>Id.</u> at 132-33.  However, under longstanding precedent, that ministerial duty did not extend to making a "discretionary evaluation of evidence, including evidence extrinsic to the Petition itself, to reach a factual conclusion not evident from the face of the Petition."  <u>Id.</u> at 133-34.  The Court of Appeal concluded thus:

> Neither section 9201 nor section 9207 authorizes a local elections official to evaluate the credibility of unidentified third parties, consider extrinsic evidence, and make an adjudicative decision concerning whether the election laws have been violated. In the absence of explicit legislative authorization, we conclude that such powers are not granted to elections officials.

<u>Id.</u> at 135.  In plaintiff's view, <u>Wade</u> and its line of cases mean that Bynum exceeded her ministerial authority by (1) investigating beyond the face of plaintiff's declaration of candidacy, and (2) unilaterally interpreting § 20 to preclude plaintiff's candidacy.

17

With no state court cases regarding the enforcement of § 20, it is unclear whether the state courts would find Bynum's power to enforce a substantive candidacy requirement (that the candidate not have certain felony convictions) subject to the same limitations recognized in <u>Wade</u> and other ballot referendum cases for procedural filing requirements.  The court's brief research revealed at least one trial court that interpreted Elections Code § 10513, the same provision invoked by Bynum, as <u>requiring</u> a county clerk elections official to reject the candidacy declaration of a candidate who did not meet one of the substantive requirements for office (there, a property ownership requirement to be elected to the water district board of trustees, Cal. Water Code § 75166.2).  <u>Santa Ynez River Water Conservation Dist. Improvement Dist. No. 1 v. Holland</u>, No. 18-CV-05437, 2019 WL 13152214 (Cal. Super. Ct., Santa Barbara Cty., Sept. 20, 2019).  The Superior Court found that "when the evidence unmistakably shows that a candidate cannot meet the statutory candidacy qualification, the [elections officer] shall reject the candidate's declaration and not place the name on the ballot, leaving the courts to decide the issue if the appropriate challenge is filed."  <u>Id.</u> at *7.  However, that decision emphasized how unambiguous the Water Code property ownership requirement was.  <u>Id.</u> at *3 ("There is no ambiguity in [§ 75166.2] . . . .") and *5 ("The statutory qualification statutes at issue in this matter . . . are unambiguous about the necessary qualifications . . . .").  As discussed above, Elections Code § 20's reference to felonies involving "theft of public money" is, at least on its face, subject to different reasonable interpretations.  It is certainly more ambiguous than Water Code § 75166.2's requirement that, to be eligible, each trustee must be "a holder of title, or evidence of title, of land in the special improvement district."

Further, albeit almost a century ago and long before the addition of § 20's exclusion of certain convictions, the California Supreme Court held that a city clerk "is not vested with the authority or burdened with the duty of ascertaining or determining, either as a matter of fact or as a matter of law, whether or not the candidates who thus offer themselves are qualified to hold and exercise the offices which they are respectively seeking."  <u>Felt v. Waughop</u>, 193 Cal. 498, 503 (1924) (In Bank).

With these divergent state court decisions, none of which address § 20 itself, the court

finds these uncertain questions of state law warrant abstention.  See Moore v. Hosemann, 591

F.3d 741, 742 (5th Cir. 2009) (recognizing that the plaintiff's "challenge, like many election

disputes, is based on an interpretation of uncertain state law, which should be resolved at the state

level before we consider wading into a constitutional thicket").

Therefore, all three Pullman factors are satisfied.

### 5.   Avenues for Seeking State Court Determination

One of plaintiff's main objections to abstention in this case is that the currently pending

Mandamus Proceeding holds no promise of vindicating her rights asserted in this court.  Plaintiff

may be correct as a factual matter, given that the mandamus petition was filed by defendant

Bynum (and only names plaintiff Olson as the real party in interest).  However, despite defendant

Bynum pointing to the Mandamus Proceeding as the basis for her abstention request, as a legal

matter the existence of the Mandamus Proceeding is not what motivates the court to abstain in

this case.

In contrast to some other abstention doctrines, "abstention under Pullman does not require

that there be a state proceeding already pending."  Sullivan Equity Partners, LLC v. City of Los

Angeles, No. 216CV07148CASAGRX, 2017 WL 1364578, at *4 (C.D. Cal. Apr. 12, 2017).  The

pendency of "a state court action that is likely to resolve the state questions" can "tip the scales in

favor of abstention," Wright & Miller, 17A Fed. Prac. & Proc. Juris. § 4242 (3d ed.); but as

demonstrated by Pullman itself, abstention can also be ordered with a directive for the plaintiff to

initiate appropriate state proceedings to answer the state law questions.  See Pullman Co., 312

U.S. at 501 (noting availability of judicial review of Commission's orders, with no mention of

previously commenced action); C-Y Dev., 703 F.2d at 380 (referencing future "hypothetical state

adjudication" to narrow constitutional issues).  Moreover, although plaintiffs are free to litigate all

claims in state court action if they choose, Pullman abstention does not depend on plaintiffs'

ability to vindicate their rights in state court.

Here, the possibility that the state court presently handling the Mandamus Proceeding

might answer the two uncertain questions identified above is fortuitous in that it might provide

clarity on the state law questions sooner than if plaintiff commences her own fresh writ of

mandate action.  However, the court understands plaintiff's concern that she is not in control of defendant Bynum's petition, and the court recognizes that a favorable ruling for Bynum in the Mandamus Proceeding might not fully address the questions that require addressing by a state tribunal.

Thus, plaintiff may also consider commencing her own writ of mandate proceeding under California Code of Civil Procedure § 1085.  It appears that plaintiff, a taxpayer, elector, and citizen of Siskiyou County (FAC at 2), would be a "beneficially interested" party with standing to bring a petition for writ of mandate seeking a declaration that **(1)** Elections Code § 20 does not bar the candidacy of a person convicted of public benefits fraud for their conduct while not holding public office, and **(2)** Elections Code §§ 20 and 10513 do not authorize the designated county elections official to determine whether a declared candidate has criminal convictions that constitute felonies of the type enumerated in § 20 and therefore not place the candidate's name on the ballot.  See Cal. Civ. Proc. Code §§ 1085, 1086; Carsten v. Psychology Examining Com., 27 Cal. 3d 793, 796-97 (1980) (agreeing that "there are circumstances under which a citizen-taxpayer may compel a governmental instrumentality to comply with its constitutional or statutory duty," and noting that "[o]ne who is in fact adversely affected by governmental action should have standing to challenge that action if it is judicially reviewable"); Felt, 193 Cal. at 502 (holding that city "resident, elector, and taxpayer" had beneficial interest under § 1086 to seek writ of mandate to compel city clerk to certify correct list of candidates for local office).  **In presenting such a petition, plaintiff should inform the state court of her claims that applying § 20 to exclude candidates like herself violates her rights under (A) the First Amendment, (B) the Fourteenth Amendment's Due Process Clause, and (C) article I, section 2 of the California Constitution**.  See England v. Louisiana State Bd. of Med. Examiners, 375 U.S. 411, 419-21 (1964) (upon abstention, a party must at least inform the state court "what [her] federal claims are, so that the state statute may be construed 'in light of' those claims").

If plaintiff opts to litigate her federal claims in state court and the state court decides those claims, this court will be precluded from revisiting those claims—unless plaintiff files on the state court record an "England reservation" notifying the state court of her intention to return to this

court to litigate her federal claims.  Id. at 419 (party who "unreservedly litigat[es] federal claims in the state courts although not required to do so" is not "allowed to ignore the adverse state decision and start all over again in the District Court"), 421-22 (where an "explicit reservation" is made, party's "right to return [to federal court] will in all events be preserved"); see San Remo, 145 F.3d at 1106 n.7 (noting that plaintiff was free to present federal claim to state court but that "[i]f he wishes to retain his right to return to federal court for adjudication of his federal claim, he must make an appropriate reservation in state court).

        To clarify, the court is not abstaining for the purpose of requiring plaintiff to seek an adequate remedy elsewhere.  Rather, this court is abstaining so that a state tribunal can clarify the important issues of state statutory interpretation so as to narrow the federal constitutional issues raised.  It is up to plaintiff how to bring these questions to a state court—whether in the currently pending Mandamus Proceeding, in a new writ of mandate petition, or through some other available procedure.[15]  But this federal litigation will not resume until a state court decides these questions of state law—or until a party demonstrates other good cause for lifting the stay.

## IV.  CONCLUSION

        For the reasons discussed above, it is HEREBY ORDERED that:

1.  Defendant Bynum's motion to dismiss (ECF No. 18) is GRANTED IN PART insofar as it

---

[15]     The court takes judicial notice of a July 2020 prefiling order entered by the Siskiyou County Superior Court designating plaintiff a vexatious litigant.  (ECF No. 18.3 at 4.)  See Papai v. Harbor Tug & Barge Co., 67 F.3d 203, 207, n.5 (9th Cir. 1995), rev'd on other grounds, 520 U.S. 548 (1997) ("Judicial notice is properly taken of orders and decisions made by other courts and administrative agencies.").  Nevertheless, the undersigned trusts that a California state court presented with this order will find that any new proceeding plaintiff may file pursuant to this order "has merit and has not been filed for the purposes of harassment or delay."  Cal. Civ. Proc. Code § 391.7(b) (presiding judge shall permit filing of litigation that meets these criteria).  "[E]ven when a plaintiff has been declared a vexatious litigant, the statute does not preclude a plaintiff from filing subsequent lawsuits, so long as those lawsuits have merit."  Wolfe v. George, 385 F. Supp. 2d 1004, 1010 (N.D. Cal. 2005), aff'd, 486 F.3d 1120 (9th Cir. 2007); see Wolfgram v. Wells Fargo Bank, 53 Cal. App. 4th 43, 60, 61 (3d Dist. 1997) ("When a vexatious litigant knocks on the courthouse door with a colorable claim, he may enter.").  It is the undersigned's hope that the state court's presiding judge would opt not to require plaintiff to furnish a security for the filing of a new proceeding pursuant to this order.  See Cal. Civ. Proc. Code § 391.7(b) (presiding judge "may condition" filing on furnishing of security).

requests a stay of these proceedings;

2. This case is STAYED until the court is informed of a state court's determination of the two questions of state law identified in this order;

3. The court shall retain jurisdiction to address any of plaintiff's federal claims still remaining once the state court has decided the state-law questions;

4. The parties shall submit a joint status report **every six months**, beginning on December 1, 2022.  The parties shall file a notice within **seven days** of any state court ruling on the state-law questions, attaching any relevant decision(s) and indicating whether the instant proceedings should recommence.

Dated:  June 7, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

olso.2481

22